L. Kingsley Smith, J.
In this proceeding brought pursuant to article 78 of the CPLK the petitioners, who are the Locust Valley Library and the members of its board of trustees, seek a judgment (1) decreeing that the sum of $41,381.16 appropriated by the voters of Central School District No. 3 of the Town of Oyster Bay on May 4, 1966 for library purposes for the *317 Locust Valley Library was, and is, an annual appropriation for such purposes for the fiscal year commencing July 1, 1967 and ending June 30,1968; and (2) directing the respondents who are the said Board of Education, the individuals constituting such board and the district clerk, to raise such amount for such purposes by (a) the levy and collection of taxes on the assessable property in former Union Free School District No. 4 of the Town of Oyster Bay, or, in the alternative (b) the levy and collection of taxes in the same manner as other general taxes.
The facts as set forth in the petition and supporting affidavit of the president of the library are not disputed by the respondents. The parties appear to be in agreement that the only questions presented for determination are matters of law.
The Locust Valley Library is a free association library chartered September 22, 1910 by the Board of Regents of the University of the ¡State of New York, and registered by that body on August 31,1911. The library is situated in the community of Locust Valley, an unincorporated area of the Town of Oyster Bay. Prior to the organization of ¡Central School District No. 3 in 1959, the library was situated within the geographical limits of Union Free ‘School District No. 4 (Locust Valley School District). Central School District No. 3 of the Town of Oyster Bay was laid out in 1957 and was organized in 1959. The Central School District comprises former Union Free School District No. 3 (Brookville School District), former Union Free School District No. 4 (Locust Valley School District), and former Union Free School District No. 6 (Bayville School District).
From the time of its incorporation in 1910, to and including the fiscal year begun July 1, 1966 and ended June 30, 1967, the Locust Valley Library has received tax support by school district voters. Such support was given first by the voters of former Union Free School District No. 4 and after centralization by the voters of Central School District No. 3. It is unquestioned that its continued existence depends on tax support. Such support has been given pursuant to section 259 of the Education Law and predecessor .statutes. Records of the library indicate that in the early days the amount of the appropriation for library purposes was fixed by the school district voters during the course of the school district meeting. Later on, the trustees of the library prepared budgets which were submitted in advance to the Board of Education, and subsequently in the form of propositions separate and distinct from the school budget presented to and voted upon iby the voters of Union Free ¡School District No. 4.
*318 In 1947 a written agreement was entered into between the Trustees of the Library and the Board of Education of Union Free School District No. 4. The preamble paragraphs of that agreement recite the library’s chartering by and registration with the Board of Regents, the past voting action of the inhabitants of the Union Free School District No. 4 in providing for the maintenance and support of the library and the willingness of the library trustees in consideration of the support granted and to be granted out of tax moneys levied and collected by the Board of Education ¡to make available to all residents of Union Free School District No. 4 the full facilities and privileges of the library. The agreement then provided for submission by the library trustees to the Board of Education on or before March 15 of annual library budgets and a statement of the amount proposed-to be raised by school taxes; inclusion of the amount to be raised by school taxes in the Board of Education budget to be submitted to the school district voters at their annual meeting; provision for the levy of .the necessary tax following adoption of the budget and payment of moneys raised by such tax levy. The library trustees agreed to continue the library so as to comply with the requirements of the Board of Regents and to provide free library service for all the residents of Union Free School District No. 4 with the understanding that such library would, be the public library for such school district. The agreement further provided that its term was for the school year ending June 30,1948 and that it would be renewed automatically from year to year by the appropriation and payment of the tax moneys requested by the library trustees.
After the 1947 agreement was made, the library trustees annually prepared and submitted a budget to the Board of Education which, in turn, submitted such budget to the voters for their approval as a proposition separate and distinct from the proposition for the approval of the school district budget. Upon approval by the voters of the amount to be appropriated for library purposes, the Board of Education levied a tax upon the taxable property within the .school district in the amount so approved and paid over to the treasurer of the library the tax moneys collected.
After Central ¡School District No. 3 was organized in 1959, the library trustees continued to submit budgets annually to the Board of Education of Central School District No. 3 in the same manner as had been done with the Board of Education of Union Free School District No. 4. The budgets thus submitted were voted upon by the qualified voters of the Central School District, and the Board of Education thereafter annually levied a tax for *319 the amounts approved, upon only the taxable property within the area formerly comprising Union Free School District No. 4 and paid over to the library treasurer the tax moneys collected. This was done without any new written contract having been entered into between the library trustees and the Board of Education of the 'Central School District.
In or about February, 1965, the Department of Audit and Control in connection with an audit of the Central School District noted that a proposition for the support of the Locust Valley Library had been voted upon by the taxpayers of the Central School District and that the taxes levied were spread on the roll only in the area of former Union Free School District No. 4. The department’s report then stated that “ [no] statutory authority could be found to support the spread of taxes in a limited area for this purpose (Section 256, Education Law).” The report further noted that it had been stated: “ that this procedure was supported by a contract dated April 25,1947 between the library and former Union Free School District #4 pursuant to an automatic renewal clause and that the renewal clause was binding on the Central School District #3. ’ ’ The report rejected this contention and stated that the * ‘ contract between the library and former Union Free School District #4 terminated at the time Union Free School District #4 ceased to exist.” The Department of Audit and Control concluded its report with the statement that a new contract should have been negotiated between the library and the Central School District to provide for the support of the library.
Because of time limits involved in 1965, a proposition for the levy of taxes for library purposes on taxable property solely in the former Union Free School District No. 4 was again submitted to the voters of the Central School District and approved by them. In 1966 a bill was introduced in the Legislature designed to establish a Locust Valley Library District and permitting the library to raise funds by taxation. That bill passed both houses of the Legislature but was vetoed, with regret, by the G-overnor for technical reasons. In that same year of 1966 a proposition for levying taxes for library purposes was again submitted to the voters of the Central School District and approved by them.
In 1967 a bill to create the Locust Valley Library District was again submitted to the Legislature and such bill was approved by both houses of the Legislature. Apparently believing that this legislation would be enacted into law, the library did not in 1967 request the Board of Education to submit a library budget proposition to the qualified voters of the Central School District at *320 the annual meeting held in May, 1967. The 1967 hill to create the Locust Valley Library District, although passed by both houses of the Legislature, was vetoed by the Governor, with regret, for technical reasons as noted in his veto memorandum dated May 2, 1967. That veto by the Governor occurred on the day preceding the annual district meeting of Central School District No. 3.
On or about June 1, 1967, the trustees of the library made a written request upon the Board of Education and the clerk of the (Central iSchool District that library taxes in the amount of $41,381.16 for the support of the Locust Valley Library be levied and collected for the fiscal year beginning July 1, 1967. The library trustees, in making such request, took the position that inasmuch as no budget for the support of the library for the fiscal year beginning July 1, 1967 had been submitted to the voters of the 'Central (School District at the annual district meeting and election held on May 3, 1967, the taxes for library purposes voted at (the time of the previous annual district meeting and election held on May 4, 1966 for the fiscal year beginning July 1,1966 in the amount of $41,381.16 constituted the appropriation for library purposes for the fiscal year beginning July 1, 1967 pursuant to the provisions of section 259 of the Education Law.
The request of the library trustees was regretfully declined by the Board of Education in a resolution which recited that: ‘6 It is not clear that this Board has the statutory authority to comply with this request in the absence of a court order clarifying its powers. ’ ’ The resolution then provided that if the library trustees should institute a legal proceeding for such purpose, counsel for the Board of Education was authorized to appear in such proceeding on behalf of the board and to do everything in his power to expedite the court’s decision. In short, it is the position of the Board of Education that in prior years it at least had the authority of the voters to levy a library tax, but that in the year 1967 it lacks that authority and remains confronted with the objection of the Department of Audit and Control that there is no statutory authority for the procedure heretofore followed. It therefore felt it had no alternative but to decline the request of the library trustees.
The comments of the Department of Audit and Control in its 1965 report appeared to be the source of the present difficulty. It is therefore necessary to give consideration to them and to determine what weight, if any, shall be accorded to those comments. At the outset it is appropriate to note, as do the petitioners in their memorandum submitted in this proceeding, that *321 the practice followed by the Board of Education of the Central School District was in effect at least from 1960 until 1965 and was not questioned by the Department of Audit and Control until it rendered its 1965 report.
It is this court’s view that attention must be focused upon section 259 of the Education Law which has incorporated into it a “ continuing appropriation ’ ’ provision. That is to say, the section authorizes the voting of taxes for library purposes by certain enumerated taxing authorities, including a school district. Taxes so voted, unless otherwise directed by such vote, shall ‘ ‘ be considered as annual appropriations [for library purposes] until changed by further vote and shall be levied and collected yearly, or as directed, as are other general taxes.” It is specially provided in the case of a school district that ‘1 the appropriation for library purposes shall be submitted to the voters of the district in a separate resolution and shall not be submitted as a part of the appropriation of the necessary funds to meet the estimated expenditures of the school district.”
The petitioners’ memorandum in this proceeding traces the recognition given by the State of New York from 1796 onward not only to the importance of libraries in the field of public education, but to the necessity of having libraries assured of financial support through taxation. Indeed, the forerunner of the present section 259 of the Education Law is found in section 38 of the University Law enacted 75 years ago (L. 1892, ch. 378) whose language in pertinent part is substantially identical with that now found in the present section 259. Thus, as petitioners say in their memorandum, “ the Locust Valley Library is not seeking a special grant or privilege ”; it seeks the just compensation to which it claims entitlement for the public service it will render in the field of education during the 1967-68 fiscal year and which it claims is mandated by reason of the action taken by the taxpayers at their school district meeting held a year ago last May.
The contention of the petitioners that section 259 of the Education Law provides for continuity of tax support is strongly buttressed by the decision of Mr. Justice Portland A. Johnson in Peninsula Public Library v. Board of Educ. of Union Free School Dist. No. 15 of Town of Hempstead (N. Y. L. J., June 2, 1959, p. 15, col. 3). In that case the voters of the school district at the annual meeting voted an appropriation of $85,708 for the Peninsula Public Library pursuant to section 259 of the Education Law. At the annual meeting in 1959 an increased budget of $87,819 was defeated. The court granted an order of mandamus requiring the Board of Education to levy in 1959 a library tax in the sum of $85,708 appropriated by the voters in *322 1958. In that case the court stated: “ In the court’s opinion the appropriation in 1958 must be considered as the amount fixed by the district for the annual maintenance of the library until it is increased by the adoption of another and larger budget, or until support of the library is withdrawn by formal, unequivocal action of the voters. The defeat of a proposed increased budget cannot be construed as such a withdrawal of support.”
The proposition adopted by the voters of Central School District No. 3 at the annual meeting and election held on May 4, 1966 was identical in substance with those propositions previously adopted at every annual election and meeting held since centralization took place in 1959. All of such propositions authorize the Board of Education to levy a tax on the former Locust Valley School District alone and to pay the proceeds thereof to the board of trustees of the Locust Valley Library to defray its budget for the particular fiscal year amounting to a specified sum. It does not appear that any property owner or taxpayer in the area of the former Locust Valley School District against which such taxes were levied objected to the library tax being imposed solely on such area. Nor does it appear that objection to the restricted area of taxation was objected to by any property owner or taxpayer in the areas of the other two former Union Free School Districts which were absorbed into the Central School District. The objection to levying the library school tax solely upon property in the former Locust Valley School District was raised by the Department of Audit and Control by its statement in the 1965 report that ‘ ‘ [no] statutory authority could be found to support the spread of taxes in a limited area” for the support of the Locust Valley Library. That report cited section 256 of the Education Law. However, this ignores the fact that the tax voted was authorized by a vote pursuant to section 259 of the Education Law. The report indicates that someone informed the Department of Audit and Control that the procedure followed in appropriating money for the Locust Valley Library was based upon the 1947 contract between the trustees of the Locust Valley Library and the Board of Education of former Union Free School District No. 4 (Locust Valley School Distrct). 'Since it was the fiscal affairs of the Central School District which were being audited it seems reasonable to infer that whatever information was supplied to the Department of Audit and Control or its representatives emanated from the Central School District rather than the trustees of the Locust Valley Library.
*323 In this proceeding the library trustees do not rely upon the 1947 agreement and its automatic renewal clause to support their position, beyond stating that such agreement represented ‘ ‘ a very prudent and reasonable understanding showing exactly what the Board of Education was expected to do in the way of producing tax money, and what the Library was prepared to offer to the inhabitants of the district in return for their tax support.” The petitioners concede that the 1947 agreement between the library trustees and the Board of Education of the former Locust Valley School District contained terms and conditions relating to the library service to be furnished which were appropriate for a contract under section 256 of the Education Law. However, they point out that the procedure which the 1947 agreement provided for was precisely what is called for under section 259 of the Education Law. That is to say, preparation of the library budget by the library trustees, transmittal of such budget to the Board of Education (which lacked authority to approve, disapprove or modify it), submission of the budget to the voters by separate proposition, levy and collection by the Board of Education of the taxes so voted, and payment of the taxes collected to the library treasurer. Consequently, the petitioners claim the Department of Audit and Control was wrong in its premise that the procedure employed in appropriating money for library purposes was grounded upon a contract made pursuant to section 256 of the Education Law and that therefore the criticism and comment contained in the 1965 report of that Department have no validity.
This court agrees with the petitioners that the procedure followed by the Central School District was lawful and that such procedure does not depend for its validity upon the 1947 agreement or any theory of automatic renewal thereof. The votes which were taken from at least 1960 until 1966 were those of qualified voters of the Central School District. The authority named in section 255 of the Education Law and which was authorized by section 259 to vote taxes for library purposes had to be one “ authorized to levy and collect taxes ”. Former Union Free School District No. 4 (Locust Valley School District) was no longer such an authority. As a result of centralization, the only authority meeting such requisites was the Central School District. It does not follow, however, that the Board of Education of the Central School District lacked the power which the Board of Education of Union Free School District No. 4 had, to levy the library tax exclusively in that district, or that the Board of Education of the Central School District was required by law to levy the tax on all property within the *324 centralized district. Section 1804 of the Education Law granted to Boards of Education of Central School Districts the same powers and duties as Boards of Education possess in Union Free School Districts. A component district involved in a centralization is continued in existence for certain purposes, among which are paying its indebtedness, the sale of its property and the allocation of the proceeds of such sale. In these situations, and others, the existence of the component district is preserved and the Board of Education of the Central School District possesses the powers of the superseded Board of Education of the component district to do what is required to carry out the purposes for which the component district is considered to be.still in existence. The court agrees with the contention of the petitioners that article 37 of the Education Law providing for • the centralization of elementary and high schools does not purport to be concerned with, libraries'. The legislative purpose of article 37 set forth in section 1801 was “ to lay out central school districts, for the establishment of central schools to give instruction in elementary or elementary and high school subjects.” No indication is given that it was the intention to legislate concerning other educational facilities such as libraries which the Legislature had placed under the supervision of the Board of Regents. It is thus indicated that libraries were not intended to be affected by centralization under article 37 and that tax support for libraries was to continue as it had before centralization. The only effect that centralization could have on tax-supported libraries emanates from section 259 of the Education Law which requires that the vote of library taxes be by an “ authority ” having the power to levy and collect taxes. This requirement operates to extend the vote to the qualified voters of the entire .Central .School District and places upon the Board of Education of that central district the duty to levy and collect the library tax, a duty which prior to centralization rested upon the Board of Education of the Union Free School District which was absorbed into the Central School District. It does not follow, however, that article 37 of the Education Law or the laying out and organizing of a central school district under such article worked a change in the area upon which the library tax was to be levied. There is no statutory provision which requires it, and the limited scope of article 37 indicates it was not intended. If the centralization of these three former.Union School Districts requires the qualified voters residing in the areas of former Union Free School Districts Nos. 3 (Brookville) and 6 (Bayville) to tax themselves to support a library which they cannot use and which serves only *325 the inhabitants of the area of former Union Free School District.No. 4 (Locust Valley), it is doubtful whether their response . would be favorable. In that event, because of centralization Locust Valley would lose the library which has served the community for more than half a century. A construction of the centralization statute which could well bring about such a result appears to this court to be as unreasonable as it is unnecessary. From a practical point of view there is no difficulty involved in levying separate or additional taxes on the areas comprising the former Union Free ¡School Districts now embraced in the 'Central School District. Exhibit I annexed to the petition demonstrates that four of the five Central School Districts in the Town of Oyster Bay already do so. In this court’s opinion the Board of Education of 'Central School District No. 3 has acted properly in the procedure followed since centralization with respect to the tax support for the Locust Valley Library.
Accordingly, the court finds that the sum of $41,381,16 appropriated by the voters of Central School District No. 3 of the Town of Oyster Bay on May 4,1966 for library purposes for the Locust Valley Library was, and is, an annual appropriation for such purposes for the fiscal year commencing July 1, 1967 and ending June 30, 1968 and the respondents are directed to raise such amount for such purposes by the levy and collection of taxes on the assessable property in former Union Free School District No. 4 of the Town of Oyster Bay.